UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>                                  Plaintiff,<br><br>v.<br><br>**JEREMY JAMES JENKINS,**<br><br>                                  Defendant. | **CASE NO. 4:23-CR-00358-13-H-LHR** |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO SEVER**

The United States of America, by and through its undersigned counsel, respectfully submits its response in opposition to Defendant's Motion to Sever (D.E. 247). Defendant argues that he would be prejudiced if he is tried together with his co-defendants. However, Defendant and his charged co-defendants were properly joined, and he cannot demonstrate the specific compelling prejudice necessary to warrant severance. For the following reasons, Defendant's motion should be denied.

**I. PROCEDURAL HISTORY**

On August 16, 2023, a federal grand jury seated in Houston, Texas, returned an indictment charging Defendant with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); conspiracy to possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 846; attempt to possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. (D.E. 1.)

On August 24, 2023, Defendant was arrested and made an initial appearance before the Honorable Yvonne Y. Ho, United States Magistrate Judge, Southern District of Texas. The

Government moved for Defendant's detention, and he was temporarily detained pending a hearing on the Government's motion. (D.E. 17.) On August 28, 2023, a detention hearing was held before the Honorable Andrew M. Edison, United States Magistrate Judge, Southern District of Texas. After hearing evidence, Judge Edison entered an order releasing Defendant on a $50,000 unsecured bond subject to various conditions. (D.E. 46.)

On January 26, 2024, United States Pretrial Services filed a bond violation report alleging that Defendant committed a new crime while on release and that he failed to maintain or actively seek employment. (D.E. 75.) The report primarily arose from Defendant's arrest for criminal mischief on January 23, 2024. (D.E. 75.) A hearing was held regarding the violations on February 8, 2024, and Judge Edison modified Defendant's conditions of release to require that he submit to home detention with GPS location monitoring. (D.E. 80.)

On September 18, 2024, the Government filed a motion to revoke Defendant's bond, arguing that Defendant violated the terms of his pretrial release by violating federal, state, or local law and possessing controlled substances. (D.E. 92.) Judge Edison ordered Defendant's bond revoked and issued a written order following the hearing finding probable cause that Defendant committed a federal, state, or local crime while on release, and he was therefore unlikely to abide by any condition or combination of conditions of release. (D.E. 180.)

On December 17, 2024, Defendant filed his first Motion to Set Bond, arguing that an offer of employment and his grandmother's ailing health supported pretrial release. (D.E. 105.) On December 27, 2024, the Court entered an order denying the first Motion to Set Bond. (D.E. 111.)

On February 27, 2025, a federal grand jury seated in Houston, Texas, returned a superseding indictment charging Defendant in Count One with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); Count Two with conspiracy to possess

with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) & (D), and 846; Count Twelve with attempt to possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and Count Thirteen with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. (D.E. 113.) This superseding indictment incorporates charges and defendants from a separate, previously filed indictment. This superseding indictment also expands the scope of the alleged robbery conspiracy charged in Count One and alleges that Defendant and his co-defendants are members of a robbery crew (the "Robbery Crew" or "Enterprise") that conspired together to take property and illegal narcotics and drug proceeds by force, violence, and fear. Additionally, the superseding indictment alleges that the Robbery Crew members conspired together to possess with intent to distribute controlled substances. Defendant appeared for an arraignment on the superseding indictment on March 11, 2025. (D.E. 143.) The case was certified complex on May 1, 2025. (D.E. 193.)

On January 27, 2026, co-defendant Christian Xavier Rucker filed a Motion to Continue Trial from the current March 2026 trial setting. (D.E. 244.) Defendant Jenkins was the only co-defendant opposing the motion. (D.E. 244.) On February 2, 2026, Defendant Jenkins filed the present Motion to Sever, urging the Court to sever him from the superseding indictment and schedule a separate trial or, in the alternative, sever Counts Six through Eleven. (D.E. 247.) For the following reasons, the Defendant's motion should be denied.

## II. ARGUMENT

**A.**   *Defendant is properly joined with his co-defendants.*

Federal Rule of Criminal Procedure 8 governs the joinder of both defendants and offenses in a criminal case. Fed. R. Crim. P. Rule 8(b) permits the joinder of defendants in a single

3

indictment where it is alleged, as it is here, that the defendants participated in the same series of criminal acts or transactions constituting the offense(s) charged. *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985). Defendants charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried jointly. *See id.* Indeed, "[i]t is the general rule that persons who are indicted together should be tried together." *Id*. at 1174. The propriety of joinder is to be determined from the face of the indictment and the factual allegations in the indictment must be accepted as true absent prosecutorial misconduct. *United States v. Leach*, 613 F.2d 1295, 1299 (5th Cir. 1980). All of these factors are present in this case and weigh in favor of a joint trial.

      Defendant Jenkins is properly joined with his co-defendants in the superseding indictment. The case law and statutes are clear that the United States has no burden beyond the face of the indictment to show the propriety of initial joinder. The superseding indictment itself charges Defendant Jenkins with being a member of a Robbery Crew with twelve other co-defendants who rob victims of illegal narcotics and drug proceeds (Count One) and that the Defendant and his codefendants conspired together to possess with intent to distribute cocaine and marijuana (Count Two) from April 14, 2023 to August 25, 2023. Moreover, Defendant Jenkins is accused of attempting to possess with intent to distribute at least 5 kilograms of cocaine (Count Twelve) and possessing a firearm in furtherance of drug trafficking (Count Thirteen) with five other co-defendants, all members of the Robbery Crew, for an incident that occurred on July 27, 2023. The robberies contained within the superseding indictment are of a common scheme to rob drug dealers and are a series of similar robberies committed by the Robbery Crew, of which Defendant Jenkins was a member. Defendant Jenkins does not appear to genuinely contest that joinder in the first

4

instance was proper. Nonetheless, it is clear from the charging instrument itself that joinder was appropriate.

**B.    *Defendant cannot demonstrate specific compelling prejudice to sever himself from his co-defendants for trial.***

Federal Rule of Criminal Procedure 14 governs the severance of both defendants and offenses in a single indictment. "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). The presumption in favor of a joint trial for properly joined defendants is strong. "Severance is an exception warranted only if there is a serious risk that a joint trial would compromise a specific *trial right* of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018) (internal quotation and citation omitted) (emphasis added). This is because joint trials "promote efficiency and protect against the inequity of inconsistent verdicts." *Id*. (internal quotation omitted); *accord Richardson v. Marsh*, 481 U.S. 200, 210, 107 (1987) ("Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.").

As Defendant Jenkins correctly noted, the Fifth Circuit has repeatedly held that severance is the exception and a defendant seeking severance faces a "doubly high burden." *Ledezma-Cepeda*, 894 F.3d at 690. "To promote judicial economy and the interests of justice, the federal system prefers joint trials of defendants who are properly charged in joint indictments," *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002), "particularly in conspiracy cases," *United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir. 1995); *See also United States v. Age*, 136 F.4th 193, 246-47 (5th Cir. 2025) (denying severance where four co-defendants were charged with being "part of the *same* conspiracy, and of committing criminal acts in tandem at the *same* time…").

5

A motion for severance is left to the discretion of the trial court and the strong presumption favoring joint trials can only be overcome by a defendant demonstrating "specific compelling prejudice." *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007). Even where the "risk of prejudice is high . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539; *see also United States v. Al–Esawi*, 560 F.3d 888, 891 (8th Cir. 2009) ("Only in an unusual case will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder.").

To demonstrate specific compelling prejudice sufficient to warrant severance, a defendant must show "(1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012). Additionally, a defendant seeking severance "must also show that he [will] not receive adequate protection from the potential prejudice of a joint trial through the court's instructions to the jury." *United States v. Posada-Rios*, 158 F.3d 832, 863 (5th Cir. 1998). Most commonly this is encountered where evidence admissible against some defendants is not admissible against others, which can ordinarily be cured with carefully crafted instructions to the jury. *See Zafiro*, 506 U.S. at 540–41. A defendant bears the burden of making these showings, *United States v. Hamilton*, 694 F.2d 398, 400 (5th Cir. 1982), and prejudice cannot be presumed from the joint nature of a proceeding alone. *United States v. Harris*, 458 F.2d 670, 673 (5th Cir. 1972). Because the type of prejudice Rule 14 is concerned with is to a defendant's trial rights, prolonged pretrial detention is generally not considered sufficient to warrant severance on its own. *See, e.g., Zafiro*, 506 U.S. at 539 ("[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific *trial right*." (emphasis added)); *United States v.*

*Narzikulov*, 2019 WL 6699801 at *2, n.3 (E.D.N.Y. Dec. 9, 2019) ("Absent a speedy trial violation, pre-trial detention alone does not justify severance.").

In the present case, Defendant Jenkins argues that he should be severed from his co-defendants because the evidence against some of the co-defendants is violent and emotional because one of the robberies resulted in two deaths, which Defendant Jenkins did not participate, so Defendant Jenkins is severely prejudiced. However, severance is not proper merely because the evidence against a co-defendant may be different than that against the defendant. *Zafiro*, 506 U.S. at 540; *Posada-Rios*, 158 F.3d at 863.

Here, Defendant Jenkins is charged in *two conspiracy counts* alleging his involvement in a violent Robbery Crew with twelve other co-defendants/co-conspirators that used firearms to facilitate robbing drug dealers of their drugs and money. Specifically, on July 27, 2023, some of the Robbery Crew members, including Defendant Jenkins, met to plan another robbery, not knowing it was an FBI sting operation. During the planning meeting, Defendant Jenkins served as a lookout outside the front door of the meeting. After the planning meeting ended, the Robbery Crew members left to conduct the robbery in three vehicles. Vehicle One served as a static lookout positioned towards the front entrance of the robbery location. Vehicle Two served as the assault vehicle with five shooters in it that were tasked with entering the structure to conduct the robbery. Vehicle Three served as mobile surveillance roving near the robbery location tasked with alerting the Robbery Crew members if anything suspicious was approaching the area. Defendant Jenkins rode to the robbery with another Robbery Crew member, Defendant Butler, in Vehicle Three, serving as mobile surveillance. During the robbery, Defendant Jenkins and Defendant Butler served as lookouts and security for the other members tasked with breaking through the doors and stealing the money and drugs. However, after breaking through the doors, the Robbery Crew

7

members tasked with stealing the money and drugs quickly realized there was nothing inside and thought they were being set up by a drug cartel so they called for assistance. While this occurred, Defendant Jenkins quickly rode back to a nearby gas station in Vehicle Three with Defendant Butler where Defendant Jenkins was dropped off to gather assistance from another Robbery Crew member, Defendant Draper. Defendant Jenkins jumped into Vehicle One driven by Defendant Draper and went back towards the robbery location to provide back up to the other Robbery Crew members.

Additionally, the Robbery Crew members conducted similar robberies just two weeks earlier on July 14 and July 19. The robbery on July 14 was an FBI sting operation nearly identical to the robbery on July 27, in which Defendant Jenkins participated. In both robberies, the plan was to use firearms to rob a purported drug dealer. Two co-defendants participated in both the July 14 and July 27 robberies (Winnfield and Mitchell). The July 19 robbery, which occurred between the July 14 and July 27 robberies, was planned in the same manner as the other two. In the July 19 robbery, the plan was to use firearms to rob a purported drug dealer. In the July 14 and July 27 robberies, the Robbery Crew did not encounter any opposition, so no shootings occurred. During the July 19 robbery, the Robbery Crew encountered opposition at the target drug stash house and a shootout resulted. In the shootout, a Robbery Crew member, Demarcus Edwards, was killed along with a victim living in the house, Eduardo Ayala-Salgado. Defendant Butler, who Defendant Jenkins was riding with in Vehicle Three during the July 27 robbery, was directly involved in the July 19 robbery that resulted in two deaths.

The government anticipates trial evidence will show it was common for the Robbery Crew members to alternate positions for different robberies depending on who discovered the robbery opportunity and which Robbery Crew members were available. After stealing cash and drugs,

members of the Robbery Crew sold the drugs for profit. Moreover, the anticipated trial evidence will show several connections between Defendant Jenkins and various members of the Robbery Crew through witness observations, social media posts, and cellular records. As depicted in the chart below, the Counts and co-defendants in this case are intrinsically intertwined.

| Defendant Name | July 14th Robbery Participant | July 19th Robbery Participant | July 27th Robbery Participant |
|---|---|---|---|
| (1) BUTLER | | X | X |
| (2) MAXWELL | | | X |
| (3) WINNFIELD | X | | X |
| (4) MITCHELL | X | | X |
| (5) BOLTON | X | | |
| (6) J. CHAMPION | X | | |
| (7) GLOVER | X | | |
| (8) D. CHAMPION | X | | |
| (9) ANDREWS | X | | |
| (10) JONES | X | X | |
| (11) RUCKER | | X | |
| (12) DRAPER | | | X |
| (13) JENKINS | | | X |

Based on the clear and unequivocal statutes, court rules, case law, and anticipated evidence, Defendant Jenkins was in fact properly joined and therefore should not be severed from his co-defendants for trial.

Moreover, the cases Defendant Jenkins cites to support his position can be easily distinguished from the scenario he currently faces at trial on the superseding indictment. For example, in *Erwin*, a peripheral defendant's conviction was reversed because that defendant was only charged with perjury in a trial focused on RICO and a drug conspiracy that involved kidnappings, beatings, and a killing. *United States v. Erwin*, 793 F.2d 656, 665-66 (5th Cir. 1986). Here, Defendant Jenkins is charged in both conspiracies in the superseding indictment that encompass all the defendants. The evidence will show that Defendant Jenkins participated in a robbery with other Robbery Crew members that is directly related to the conspiracy charged.

Similarly, the analysis in *Cortinas* is not applicable to Defendant Jenkins because Defendant Jenkins is a Robbery Crew member. *Cortinas* involved two defendants in a conspiracy that never associated with the Bandidos, a violent gang, that later joined a conspiracy and committed a shooting. *United States v. Cortinas*, 142 F.3d 242, 248-249 (5th Cir. 1998). Here, Defendant Jenkins is a charged member of the Robbery Crew conspiracy and participated in a robbery with Defendant Butler, another member of the Robbery Crew, who is also charged in the robbery that killed two people on July 19.

Additionally, in *McRae*, the defendants were not charged with any conspiracy charges like in this case but were tried together on various tangentially related charges. *United States v. McRae*, 702 F.3d 806, 822-828 (5th Cir. 2012). Here, Defendant Jenkins is charged in two conspiracies for his participation with the Robbery Crew.

In *Ashley*, the Fifth Circuit affirmed the district court's decision denying the severance motion because the defendant failed to articulate the "specific" prejudice faced that is necessary to overcome the presumption in favor of joinder. *United States v. Ashley*, 128 F.4th 641, 655-56 (5th Cir. 2025). The same is true in this case because Defendant Jenkins is charged in two

overarching conspiracies with other Robbery Crew members and substantive counts for his involvement in the July 27 robbery as a member of the Robbery Crew.

To the extent the Defendant's objection to the Joint Motion to Continue (D.E. 244) is a basis for prejudice to sever him from this case, it is insufficient to carry Defendant's burden and does not outweigh interests in judicial efficiency and avoiding inconsistent verdicts in this case. *United States v. Franklin*, 148 F.3d 451, 458 (5th Cir. 1998) ("To the extent that Franklin relies exclusively on the length of his pretrial incarceration as grounds for prejudice, we believe that any prejudice in this sense was insufficient to render the Milton delay unreasonable."). Defendant Jenkins is charged with being a member of the Robbery Crew with twelve other co-defendants to rob purported drug dealers of illegal narcotics and drug proceeds (Count One) and conspiring together to possess with intent to distribute cocaine and marijuana (Count Two). As with most conspiracies with multiple defendants, it is common for co-conspirators to have different roles, responsibilities, and participate in differing acts within the conspiracy. Whether defendants were or were not part of the conspiracy charged and their individual culpability within the conspiracy is a question for the jury to decide. If severed, evidence of the entire conspiracy will need to be presented at least twice—once for Defendant Jenkins and again for the other co-defendants, many of which are in a similar position as Defendant Jenkins. This would result in a substantial duplication of efforts and unnecessary judicial inefficiency. Finally, failure to try Defendant Jenkins with the other co-defendants carries a very real risk of inconsistent verdicts and deprives the jury of an opportunity to weigh their relative culpability within the conspiracy.

The arguments and allegations put forth by Defendant Jenkins simply do not rise to the level of demonstrating specific compelling prejudice if severance is not granted. Severing the homicide counts for Defendant Jenkins is not a credible alternative because it still requires the

evidence to be presented in each trial and still requires duplicative efforts. As detailed in the chart above, the co-defendants participated in multiple robberies on different days with significant overlap amongst the members within the conspiracy. The only reason Defendant Jenkin's charges and the co-defendants charged with the deaths are different is because Defendant participated in a robbery where they encountered no opponents and so the firearms were not used. High-risk activities like armed robberies tend to result in deaths. Defendant Jenkins' prejudice concerns related to the July 19 robbery and deaths can be cured with a limiting instruction at trial.

### III. CONCLUSION

Defendant Jenkins was properly joined in the superseding indictment, and he has not met his heavy burden of establishing specific compelling prejudice such that he is entitled to severance. Severance in this matter would be improper under the circumstances and would result in forcing the Government and the judicial system to expend limited resources multiple times to present essentially the same case. For the foregoing reasons, the United States respectfully requests that the Court deny Defendant Jenkin's Motion to Sever.

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

DAVID L. JAFFE
Chief, Violent Crime and Racketeering Section
United States Department of Justice

By  */s/ Justin G. Bish*
Justin G. Bish
Trial Attorney
Violent Crime and Racketeering Section
United States Department of Justice
1301 New York Avenue, N.W., Suite 700
Washington, D.C. 20530
Telephone: (202) 957-2924
Email: justin.bish@usdoj.gov

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing was delivered on February 9, 2026, to the CM-ECF system of the United States District Court for the Southern District of Texas for electronic delivery to all counsel of record.

                                          s/Justin G. Bish
                                          Justin G. Bish
                                          Trial Attorney